## <u>ORAL ARGUMENT NOT YET SCHEDULED</u>

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| APPALACHIAN VOICES, *et al.*, ) | |
| *Appellants*, ) | |
| v. ) | Case No. 25-5333 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, ) | |
| *Appellees* ) | |

## APPELLANTS' STATEMENT OF UNDERLYING DECISION

Appellants hereby submit the attached copy of the underlying federal district court order from which the appeal arises. Order, *Appalachian Voices v. EPA*, No. 25-1982 (RJL) (D.D.C. Aug. 29, 2025), Dkt. 99 (Exh. 1). Appellants also submit the attached opinion accompanying the order. Mem. Op., *Appalachian Voices v. EPA*, No. 25-1982 (RJL), 2025 WL 2494905, (D.D.C. Aug. 29, 2025) (Exh. 2). The transcript of proceedings before District Judge Leon held on August 5, 2025, was issued on September 18, 2025. *Appalachian Voices v. EPA*, No. 25-1982 (RJL) (D.D.C. Aug. 29, 2025), Dkt. 103.

Dated: October 20, 2025                          Respectfully submitted,

*/s/ HANA V. VIZCARRA*
Hana V. Vizcarra (D.C. Bar No. 1011750)
Deena Tumeh (D.C. Bar No. 1741543)
Molly Prothero (D.C. Bar No. 1779237)
Andrew Saavedra (N.Y. Bar No: 6062814) (*application pending*)
Linnet Davis-Stermitz (WA Bar No. 63190)
EARTHJUSTICE
1001 G Street NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
hvizcarra@earthjustice.org
dtumeh@earthjustice.org
mprothero@earthjustice.org
asaavedra@earthjustice.org
ldavisstermitz@earthjustice.org

*Counsel for Appellants Air Alliance Houston, Bessemer Historical Society (d/b/a Steelworks Center of the West), Deep South Center for Environmental Justice, Downwinders at Risk, Health Resources in Action, Inter-Tribal Council of Michigan, PUSH Buffalo, and WE ACT for Environmental Justice*

*/s/ Ben Grillot*
Ben Grillot (D.C. Bar No. 982114)
Kimberley Hunter (N.C. Bar No. 41333)
Irena Como (N.C. Bar No. 51812)
James Whitlock (N.C. Bar No. 34304)
SOUTHERN ENVIRONMENTAL LAW CENTER
122 C St NW, Suite 325
Washington, DC 20001
Telephone: (202) 828-8382
Facsimile: (202) 347-6041
bgrillot@selc.org

2

kmeyer@selc.org
icomo@selc.org
jwhitlock@selc.org

*Counsel for Appellants Appalachian
Voices, 2°C Mississippi, Lowcountry
Alliance for Model Communities, Parks
Alliance of Louisville, Pittsburgh
Conservation Corps (Landforce) and
Southwest Renewal Foundation*

/s/ Graham Provost
Graham Provost (D.C. Bar No.
1780222) (*application pending*)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
toby@publicrightsproject.org
graham@publicrightsproject.org

*Counsel for Appellants Allegheny
County, Kalamazoo County, King
County, Native Village of Kipnuk, City
of Sacramento, City and County of San
Francisco, City of Springfield and
Treasure Island Mobility Management
Agency*

/s/ Gary DiBianco
Gary DiBianco (D.C. Bar No. 458669)
LAWYERS FOR GOOD GOVERNMENT
6218 Georgia Avenue NW, # 5001
Washington, D.C. 20011
(202) 258-6826
Gary@lawyersforgoodgovernment.org

*Counsel for Appellants Inter-Tribal
Council of Michigan, Kalamazoo
County, and Native Village of Kipnuk.*

3

*/s/ Sara J. Eisenberg*
David Chiu (CA Bar No. 189542)
SAN FRANCISCO CITY ATTORNEY
Yvonne R. Meré (CA Bar No. 175394)
Chief Deputy City Attorney
Sara J. Eisenberg (CA Bar No. 269303)
Chief of Complex and Affirmative
Litigation 1390 Market Street, 7th Floor
San Francisco, CA 94102
Telephone: (415) 554-4274
yvonne.mere@sfcityatty.org
sara.eisenberg@sfcityatty.org

*Counsel for Appellants City and County
of San Francisco and Treasure Island
Mobility Management Agency*

*/s/ Alison Holcomb*
Alison Holcomb (WA Bar No. 23303)
(*application pending*)
Deputy General Counsel to King County
Executive & Special Deputy Prosecutor
OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
aholcomb@kingcounty.gov

*Counsel for Appellant Martin Luther
King, Jr. County*

4

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Appalachian Voices, *et al.*,

    *Plaintiffs*,

*v.*

United States Environmental Protection
Agency, *et al.*,

    *Defendants*.

Civil Action No. 25-1982 (RJL)

## ORDER
August 29, 2025 [Dkt. #29, 30, 66]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that plaintiffs' Motion for Preliminary Injunction [Dkt. #29] is

**DENIED**; it is further

**ORDERED** that plaintiffs' Motion for Class Certification [Dkt. #30] is **DENIED**;

it is further

**ORDERED** that defendants' Motion to Dismiss [Dkt. #66] is **GRANTED**.

**SO ORDERED**.

RICHARD J. LEON
United States District Judge

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Appalachian Voices, *et al.*,

      *Plaintiffs*,

*v.*

United States Environmental Protection
Agency, *et al.*,

      *Defendants*.

Civil Action No. 25-1982 (RJL)

## MEMORANDUM OPINION

August 29, 2025 [Dkt. #29, 30, 66]

Plaintiffs, twenty-three recipients of Environmental and Climate Justice Block
Grants, bring this suit individually and on behalf of a class of others similarly situated
against the United States Environmental Protection Agency ("EPA") and EPA
Administrator Lee Zeldin in his official capacity (collectively, "defendants") for relief from
the termination of their grants. They allege that defendants terminated Environmental and
Climate Justice Block Grants in violation of the separation of powers, Presentment Clause,
U.S. Const. art. I, § 7, cl. 2–3, and the Administrative Procedure Act ("APA"), 5 U.S.C.
§ 706. Accompanying their Complaint, plaintiffs move for a preliminary injunction and to
certify a Federal Rule of Civil Procedure 23(b)(2) class for all entities that received
Environmental and Climate Justice Block Grants, excluding those entities that have sued
in other courts. Defendants move to dismiss the suit for lack of subject-matter jurisdiction
and plaintiffs' failure to state a claim for relief. For the reasons set forth below, I **GRANT**
defendants' motion to dismiss, **DENY** plaintiffs' motion for preliminary injunction, and

**DENY** plaintiffs' motion for class certification.

## BACKGROUND

### I.   Statutory and Factual Background

In 2022, as part of the Inflation Reduction Act ("IRA"), Congress amended the
Clean Air Act to create the Environmental and Climate Justice Block Grants. *See* Pub. L.
No. 117-169, § 60201, 136 Stat. 1818, 2078 (2022) (codified at 42 U.S.C. § 7438). In the
amendment, Congress appropriated $2.8 billion to EPA to award grants for climate projects
and an additional $200 million for technical assistance to support grant recipients. 42
U.S.C. §§ 7438(a)–(b). The statute provides that EPA "shall use" the appropriated funds
"to award grants for periods of up to 3 years to eligible entities to carry out [eligible
activities] that benefit disadvantaged communities, as defined by the Administrator." *Id.*
§ 7438(b)(1). An "eligible entity" is: (i) "a partnership between . . . an Indian tribe, a local
government, or an institution of higher education; . . . and a community-based nonprofit
organization;" (ii) "a community-based nonprofit organization;" or (iii) "a partnership of
community-based nonprofit organizations." *Id.* § 7438(b)(3). Eligible entities may use a
grant awarded for one of the activities enumerated in the statute. *See id.* § 7438(b)(2).

EPA then developed four grant programs and a technical assistance program.
Complaint ("Compl.") [Dkt. #1] ¶¶ 9, 64. The four grant programs are the Community
Change Grants Program, the Environmental Justice Collaborative Problem Solving
Cooperative Agreement Program, the Government-to-Government Program, and the
Environmental Justice Thriving Communities Technical Assistance Centers Program. *Id.*
at ¶¶ 67, 83, 90, 95. EPA awarded hundreds of grants and provided periodic reimbursement

2

to grant recipients. *Id.* at ¶ 11.

On January 20, 2025, the President issued two executive orders implicating the Environmental and Climate Justice Block Grants. Executive Order 14,154, entitled "Unleashing American Energy," instructs, in part, that "[a]ll agencies shall immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 . . . and shall review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriate funds for consistency with the law and the policy outlined" in the order. 90 Fed. Reg. 8353, 8357 (2025); *see* Compl. ¶¶ 101–03. The second, Executive Order 14,151, entitled "Ending Radical and Wasteful Government DEI Programs and Preferencing," instructs federal agencies, in part, to provide the director of the Office of Management and Budget with a list of all "Federal Grantees" who received Federal funding for "environmental justice" programs and orders agencies to "terminate" all "environmental justice" offices and positions. 90 Fed. Reg. 8339, 8339–40 (2025); *see* Compl. ¶¶ 105–07.

Shortly after the President issued these executive orders, EPA began implementing them. The agency first froze all grant funding authorized under the IRA and prohibited grant recipients from drawing additional funds. Compl. ¶¶ 13–14, 109–10. EPA then terminated grant awards under the Environmental and Climate Justice Block Grant program *en masse. Id.* at ¶ 14. From February through May 2025, EPA sent form letters to grant recipients, notifying them that their grants were terminate for "policy reasons." *Id.* at ¶¶ 113–15.

During this period, grant recipients began challenging EPA's terminations. On

March 19, 2025, thirty-eight grant recipients sued in the District of South Carolina, alleging that the freezing of their funds and termination of their grants violated their rights under the United States Constitution and the APA. *See Sustainability Inst. v. Trump*, No. 2:25-cv-2152, 2025 WL 1486979, at *1 (D.S.C. May 20, 2025); *see generally* Compl., ECF No. 1, *Sustainability Inst.*, 2:25-cv-2152 (D.S.C.). Not long after, on April 2, 2025, three additional grant recipients sued in the District of Maryland, alleging that the termination of their grants violate the APA, their rights under the Constitution, and various federal regulations. *See Green & Healthy Homes Initiative, Inc. v. EPA*, No. 25-cv-1096, 2025 WL 1697463, at *1 (D. Md. June 17, 2025); Compl., ECF No. 1, *Green & Healthy Homes Initiative*, No. 25-cv-1096 (D. Md.). The district court in *Sustainability Institute* entered judgement on the APA claims, and the district court in *Green & Health Homes Initiative* held that EPA's termination of the grants violated the APA. *See Sustainability Inst.*, 2025 WL 1486979, at *3; *Green & Healthy Homes Initiative*, 2025 WL 1697463, at *21. The Fourth Circuit subsequently stayed the district court's order in *Sustainability Institute*, holding that the Tucker Act likely divests the district court of jurisdiction. No. 25-1575, 2025 WL 1587100, at *1–2 (4th Cir. June 5, 2025).

On July 3, 2025, Congress passed the "One Big Beautiful Bill." It included a rescission of funding for the Environmental and Climate Justice Block Grants. *See* H.R. 1, 119th Cong. § 60016 (2025). The bill rescinds "[t]he unobligated balances of amounts made available to carry out" the Environmental and Climate Justice Grants. *Id.*

## II.    Procedural History

Prior to the passage of the rescission bill, on June 25, 2025, plaintiffs brought this

4

suit, alleging that EPA's termination of the Environmental and Climate Justice Block Grants program violates the separation of powers and the Presentment Clause. Compl. ¶¶ 175–85. They also alleged that the terminations were arbitrary and capricious, and contrary to law, under the APA. *Id.* at ¶¶ 186–213.

Shortly thereafter—and several months after EPA began grant terminations—plaintiffs moved for a preliminary injunction and class certification, seeking "urgent injunctive relief to restore the Environmental and Climate Justice Block Grant program." *See* Pls.' Mot. for PI ("PI Mot.") [Dkt. #29]; Pls.' Br. in Supp. of PI Mot. ("Pls.' Br.") [Dkt. #29-1] at 2; Pls.' Reply in Supp. of PI Mot. ("Pls.' Reply") [Dkt. #77]; Pls.' Mot. for Class Cert. ("Class Cert. Mot.") [Dkt. #30]. Defendants oppose and move to dismiss the case. *See* Defs.' Mot. to Dismiss & Opp'n to PI Mot. ("MTD") [Dkt. # 66]; Defs.' Opp'n to Class Cert. Mot. [Dkt. #68]; Pls.' Opp'n to MTD ("Pls.' Opp'n") [Dkt. #87]; Defs.' Reply in Supp. of MTD ("Defs.' Reply") [Dkt. #91]. In addition, nineteen states and the District of Columbia, and a group of nonprofit organizations that were beneficiaries of the grantees, filed amicus briefs in support of plaintiffs' motion for a preliminary injunction. *See generally* Amici State Br. [Dkt. #60]; Nonprofit Amici Br. [Dkt. #81]. The Court held a hearing on plaintiffs' motion for preliminary injunction and defendants' motion to dismiss on August 5, 2025. The motions are ripe for review.

## LEGAL STANDARDS

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). When evaluating a Rule 12(b) motion, the Court may consider "the facts alleged in the Complaint, any documents either attached to or incorporated in the

complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(1) motion tests the Court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by the Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Plaintiffs bears the burden of demonstrating the Court's subject-matter jurisdiction over the claims at issue. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the Complaint. *See* Fed. R. Civ. P. 12(b)(6); *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Complaint must include "factual content" sufficient to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plaintiffs move for a preliminary injunction, which is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and

6

that an injunction is in the public interest." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 727

(D.C. Cir. 2022) (quoting *Winter*, 555 U.S. at 20). A likelihood of success on the merits

includes plaintiffs' ability to successfully establish this Court's jurisdiction. *See Elec.*

*Privacy Info. Ctr. v. Dep't of Corrections*, 928 F.3d 95, 104 (D.C. Cir. 2019). Further, the

last two factors merge when the Government is the opposing party. *Shawnee Tribe v.*

*Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021).

## ANALYSIS

Defendants argue that this case requires dismissal. They argue that the Court lacks

subject-matter jurisdiction because plaintiffs' claims belong in the Court of Federal Claims

under the Tucker Act; Congress's rescission of the "unobligated balance amounts" of the

Environmental and Justice Block Grants moots plaintiffs' claims; and the Court lacks

jurisdiction to review EPA's discretionary decision regarding how to allocate funds. MTD

at 7–18.    Defendants also argue that plaintiffs have not put forward independent

constitutional claims. *Id.* at 25. Plaintiffs respond that this Court has subject-matter

jurisdiction because they challenge the wholesale dismantling of the Environmental Justice

and Climate Justice Block Grants program—rather than individual grant terminations—

seek forward-looking equitable relief, and challenge actions that were not committed to

EPA's discretion. Pls.' Reply at 5–18. They also argue that their grant funds are still

obligated, so Congress's rescission bill does not moot their claims. *Id.* at 2–5.

Unfortunately for the plaintiffs, I have concluded that their claims warrant dismissal.

I do not have jurisdiction over plaintiffs' APA claims under the Tucker Act, and plaintiffs'

requested injunctive relief is incompatible with the Government's sovereign immunity.

7

Plaintiffs also do not have a cause of action for either of their constitutional claims, so those claims warrant dismissal as well. Because the Court lacks subject-matter jurisdiction under the Tucker Act, I do not address whether Congress's rescission of unobligated funds appropriated for the Environmental and Climate Justice Block Grants moots plaintiffs' claims, nor whether EPA's actions were committed to agency discretion.

## I.    Administrative Procedure Act Claims

"The United States and its agencies are generally immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). Under the APA, Congress has waived sovereign immunity for lawsuits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, . . . [and] seeking relief other than money damages." 5 U.S.C. § 702; *see Crowley*, 38 F.4th at 1105–06. This waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Crowley*, 38 F.4th at 1106 (quoting *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618 (D.C. Cir. 2017)); 5 U.S.C. § 702.

The Tucker Act grants jurisdiction to the Court of Federal Claims for "any claim against the United States founded . . . upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491. Our Circuit has "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government, at least *vis a vis* the APA." *Transohio Savings Bank v. Director, Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992), *abrogated on other grounds as recognized in Perry Cap.*, 864 F.3d at 620.

8

Courts must therefore determine whether "action against the United States . . . is *at its essence* a contract claim." *Crowley*, 38 F.4th at 1106 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)).

That inquiry requires an individualized assessment based on the source of the plaintiffs' rights and the nature of the relief that they seek. *Id.* To determine the source of the rights upon which the plaintiff bases his claims, the Court analyzes whether "the plaintiff's asserted rights and the government's purported authority arise from statute," "whether the plaintiff's rights 'exist[ ] prior to and apart from rights created under the contract,'" and "whether the plaintiff 'seek[s] to enforce any duty imposed upon' the government 'by the . . . relevant contracts to which' the government 'is a party[.]'" *Id.* at 1107 (quoting *Perry Cap.*, 864 F.3d at 619). In analyzing the type of relief sought, "[t]he crux of this inquiry . . . boils down to whether the plaintiff effectively seeks to attain money damages in the suit." *Id.* The Supreme Court has not, however, adopted our Circuit's two-part test.

Plaintiffs bring three APA claims. First, they allege that defendants acted arbitrarily and capriciously, in violation of the APA, by terminating the grant program because defendants did not engage in a "reasoned analysis," did not consider the "serious reliance interests" of plaintiffs, acted "on factors which Congress has not intended [EPA] to consider," and failed to consider how the terminations would impact the "primary goal[s]" of the Clean Air Act. Compl. ¶¶ 186–96 (Count III); *see* 5 U.S.C. § 706(2)(A). Second, they allege defendants acted contrary to law, in violation of the APA, by exceeding EPA's statutory authority, by acting unconstitutionally, and by acting "not in accordance with"

9

the Clean Air Act and the Impound Control Act, 2 U.S.C. § 683, when EPA terminated the grant program. Compl. ¶¶ 197–205 (Count IV); *see* 5 U.S.C. §§ 706(2)(A)–(C). Third, plaintiffs allege that defendants acted contrary to law, in violation of the APA, by violating the "Community Change Grants Terms and Conditions," by exceeding EPA's statutory authority, and by acting unconstitutionally when it de-obligated all funding for the grant programs. Compl. ¶¶ 206–13 (Count V); *see* 5 U.S.C. §§ 706(2)(A), (B).

As relief for defendants' claimed violations, plaintiffs seek both a declaratory and injunctive order. *See* Compl. at 44–45 (Prayer for Relief). They seek a declaration from the Court holding defendants' termination of the grant program and individual grants as unlawful. *Id.* at 44. As for the injunction, plaintiffs request an order that sets aside EPA's termination of the Environmental and Climate Justice Block Grants, prohibits "EPA from taking action to termination grant programs"; "[r]equire[s] EPA to reinstate all grant awards"; "[r]equire[s] EPA to make adequate staffing and other resources available to effectuate the grant programs"; and "[r]equire[s] EPA to extend the period of performance to allow Plaintiffs and class members to complete the period of performance specified in their grant agreements, accounting for the time between the time they lost access to their grant funding and [the date of relief.]" *Id.* at 44–45.

A.    Arbitrary-and-Capricious Claim

Starting with plaintiffs' arbitrary-and-capricious claim, the Court lacks jurisdiction under *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam). There, several states sued the Secretary of Education for terminating "all grants previously awarded" under congressionally funded programs. *California v. Dep't of Educ.*, 769 F.

10

Supp. 3d 72, 75 (D. Mass. 2025). The district court held that the Department of Education's

grant terminations were arbitrary and capricious under the APA because the agency had

failed to conduct individualized analyses or offer a reasoned explanation for its *en masse*

grant terminations. *Id.* at 77. As a remedy, the district court ordered defendants to

"immediately restore Plaintiff States to the pre-existing status quo prior to the termination

under all previously awarded . . . grants for recipients in Plaintiff States," among other

things. *Id.* at 76–78, 80. The Supreme Court subsequently stayed the district court's order

because "the Government is likely to succeed in showing the District Court lacked

jurisdiction to order the payment of money under the APA." *California*, 145 S. Ct. at 968.

The Supreme Court reasoned that "the APA's limited waiver of immunity does not extend

to orders 'to enforce a contractual obligation to pay money' along the lines of what the

District Court ordered here." *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*,

534 U.S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims

jurisdiction over suits based on 'any express or implied contract with the United States.'"

*Id.* (quoting 28 U.S.C. § 1491(a)(1)).

The Supreme Court affirmed its decision in *National Institutes of Health v.*

*American Public Health Association*, No. 25A103, 2025 WL 2415669, at *1 (U.S. Aug.

21, 2025). There, the National Institutes of Health ("NIH") changed its funding to align

with changed police priorities mandated by several executive orders. *Id.* (Barrett, J.,

concurring in part). In doing so, NIH issued internal guidance documents describing those

priorities and terminating numerous grants. *Id.* (Barrett, J., concurring in part). The

district court declared unlawful and vacated both the guidance and the individual grant

11

terminations under the APA. *Id.* (Barrett, J., concurring in part). The Supreme Court subsequently stayed the district court's judgment vacating the Government's termination of the individual grants. *Id.* The Supreme Court reasoned that the APA's "limited waiver of [sovereign] immunity" does not provide courts with jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Id.* (quoting *California*, 145 S. Ct. at 968).

Plaintiffs' arbitrary-and-capricious claim closely aligns with the claim at issue in *California.* Like in *California*, plaintiffs' challenge here involves a statute that requires the Executive Branch to issue grants for specified purposes; the Executive Branch terminated those grants *en mass* with a boilerplate explanation; and plaintiffs challenged the agency's terminations under the APA. *See* Compl. ¶¶ 186–96; *California*, 145 S. Ct. at 970–71, 975. Here too plaintiffs request that the Court order "EPA to reinstate all grant awards" and request extended time to perform on their grants. Compl. at 45. In other words, plaintiffs request that the Court return plaintiffs to the status quo prior to EPA's termination of their grants. I cannot issue such relief in light of the Supreme Court's holding in *California. See Nat'l Insts. of Health*, 2025 WL 2415669, at *4 (Gorsuch, J., concurring in part and dissenting in part) ("[W]hen this Court issues a decision, it constitutes a precedent that commands respect in lower courts."); *see also Harris Cnty. v. Kennedy*, No. 25-cv-1275, 2025 WL 1707665, at *6–7, *14–15 (D.D.C. 2025) (finding that an APA arbitrary-and-capricious claim is subject to *California*'s bar); *Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-cv-1643, 2025 WL 1865160, at *10–11 (D.D.C. July 7, 2025) (same).

12

Plaintiffs respond that *California* does not defeat this Court's jurisdiction because they seek "declaratory relief from global decision made in direct conflict with Congressional direction." Pls.' Opp'n at 24. Specifically, they ask the Court to "[i]ssue a declaratory judgment that the termination of grant programs mandated by Section 138 of the Clean Air Act . . . and the termination of legally-obligated grant awards issued under those programs violate the United States Constitution and the APA . . . ." Compl. at 44. Plaintiffs, however, bundled together EPA's discrete actions (*i.e.*, the termination of individual grants), presented it as global events (*i.e.*, the termination of the Environmental and Climate Justice Block Grants programs)—and then crafted its claims as programmatic challenges instead of challenges to EPA's individual grant terminations. *See, e.g., id.* at ¶ 3 ("EPA's termination of the program is unlawful."). Plaintiffs cannot artfully plead around the Tucker Act by mounting a programmatic challenge to EPA's decision to cease a contractual relationship with them. *See Crowley*, 38 F.4th at 1107 ("[W]e have cautioned plaintiffs that this court prohibits the creative drafting of complaints . . . to avoid the jurisdictional consequences of the Tucker Act." (cleaned up)).

Moreover, plaintiffs' requested declaration, holding that the termination of the grant awards is unlawful, does not have "considerable value" independent of the "future potential for monetary relief." *See Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) (internal quotation marks omitted). Such "non-monetary relief has little, if any, independent value from the future potential of monetary recovery." *Vera Inst. of Just.*, 2025 WL 1865160, at *13. Without reinstatement of plaintiffs' grants, they will receive no monetary relief, which is what they ultimately hope to attain. *See* Compl. at 44–45;

13

Proposed Preliminary Injunction Order [Dkt. #29-2] at 1–2 ("Defendants shall immediately resume the processing, disbursement, and payment of Plaintiffs' and Class Members' grants, and release funds previously withheld due to termination of the Environmental and Climate Justice Block Grant program[.]").

Accordingly, plaintiffs have not established the Court's jurisdiction over their arbitrary-and-capricious claim. I therefore deny injunctive relief and grant dismissal of plaintiffs' arbitrary-and-capricious claim.

B.     Contrary-to-Law Claims

The Court also lacks jurisdiction over plaintiffs' contrary-to-law claims. Several of my colleagues have cabined *California*'s application to arbitrary-and-capricious claims, as opposed to all claims brought under the APA. *See, e.g.*, *Harris Cnty.*, 2025 WL 1707665, at *6–7, *14–15; *Vera Inst. of Just.*, 2025 WL 1865160, at *12. I do not need to reach this issue because the Tucker Act bars plaintiffs' contrary-to-law claims under our Circuit's precedent. *See Crowley*, 38 F.4th at 1106.

Our Circuit's decisions in *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985), and *Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985), are instructive. In *Spectrum Leasing*, General Services Administration ("GSA") awarded a contract to Spectrum to develop a data communications network. 764 F.2d at 892. Subsequently, GSA did not pay Spectrum's invoices, and Spectrum sued alleging that GSA violated the Debt Collection Act. *Id.* As relief, Spectrum sought a declaration that GSA violated Spectrum's rights under the Debt Collection Act and "an injunction compelling GSA to cease withholding hardware and maintenance payments under the contract." *Id.*

14

Our Circuit held that Spectrum's suit belonged in the Court of Federal Claims because it sought "an injunction requiring the government to pay monie owed for computer hardware," and "[t]he right to these payments is created in the first instance by the contract, not by the Debt Collection Act." *Id.* at 894. Our Circuit reasoned that, "even if [the Debt Collection Act] applied," it "confers no such right in the absence of the contract itself"; "the Act in no way creates the substantive right to the remedy Spectrum seeks." *Id.*

Similarly, in *Ingersoll-Rand*, the Air Force contracted with Ingersoll-Rand to supply air compressors. 780 F.2d at 75. The Air Force terminated its contract pursuant to Federal Acquisition Regulation 52.249-2(a), "which was incorporated into the contract." *Id.* Ingersoll-Rand sued, claiming that the Air Force's decision to terminate the contract violated two other federal regulation and was arbitrary and capricious under the APA. *Id.* It sought a declaration that the contract termination was unlawful and an injunction requiring the Air Force to "reinstat[e] the original award of the contract." *Id.* at 79–80. Our Circuit held that the district court did not have jurisdiction because the suit was inherently contractual. *Id.* It acknowledged that plaintiffs sought "only a declaratory and injunctive order" but that "the essence" of the claim was "a request for specific performance of the original contract." *Id.*

Here too the source of plaintiffs' rights is contractual. *See Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) ("treating federal grant agreements as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound"). The Clean Air Act does not entitle grant funds to any particular entity "in the absence of the contract itself." *See Spectrum Leasing*, 764 F.2d at

15

894. Instead, it provides that EPA shall award grants to "*eligible entities* to carry out [eligible] activities . . . that benefit disadvantaged communities, as defined by the Administrator." 42 U.S.C. § 7438(b)(1) (emphasis added). Thus, plaintiffs' "right to . . . payments arose only upon creation and satisfaction of its contract[s] with the government; in no sense did it exist independently of [those] contract[s]." *Spectrum Leasing*, 764 F.2d at 894.

That distinguishes the present action from *Widakuswara v. Lake* (*Widakuswara II*), No. 25-5144, 2025 WL 1288817, at *1 (D.C. Cir. May 3, 2025) (per curiam). *See Widakuswara v. Lake* (*Widakuswara IV*), No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) ("substantially" adopting Judge Pillard's reasoning in *Widakuswara II*). In *Widakuswara,* plaintiffs sued when the Executive Branch sought to reduce the United States Agency for Global Media to the minimum level of operations. 2025 WL 1288817, at *1. In doing so, the Executive Branch terminated funds that Congress had explicitly appropriated in the statute for federally created entities. *Id.* at *11 (Pillard, J., dissenting). Our Circuit, sitting en banc, found that plaintiffs were likely to show that the district court had jurisdiction over plaintiffs' grant-related claims, in part, because plaintiffs' source of rights arose from statute. *See id.*; *Widakuswara IV*, 2025 WL 1521355, at *1. Here, by contrast, because the Clean Air Act did not create an entitlement for plaintiffs, their rights in no way "precedes the individual grants." *See Wadakuswara II*, 2025 WL 1521355, at *12 (Pillard, J., dissenting).

Further, it is "possible to conceive of" plaintiffs' claim that defendants acted contrary to law by allegedly de-obligating congressional funding for the Environmental

16

and Climate Justice Block Grants "as entirely contained within the terms of the contract[s]." *See Ingersoll-Rand*, 780 F.2d at 78; Compl. ¶¶ 206–13 (Count V). The Community Change Grants Program terms stipulate that, if EPA de-obligates any awarded funds, it must "re-obligate them by an award to another Community Change Grant recipient receiving an award . . . ." Compl. ¶ 209 (quoting Compl., Ex. 1-K ("CCG Grant Terms & Conditions") [Dkt. #1-4] at 16). These terms and conditions are "required for all CCG [Community Change Grant] awards." CCG Grant Terms & Conditions at 1. The Court must therefore look back to the awards themselves and ask whether plaintiffs' contracts forbade defendants' challenged conduct. This, of course, is a classic contract question that belongs in the Court of Federal Claims. *See Ingersoll-Rand*, 780 F.2d at 77–80 (Tucker Act applies to claims that the Government's termination of a contract violated statutes or regulations incorporated therein).

Plaintiffs' requested relief also signifies that I do not have jurisdiction over both contrary-to-law claims. Plaintiffs seek a court order instructing the Government to reinstate their grant awards and extend the period of performance specified in their grant agreements. *See* Compl. at 44–45. Essentially, they seek continued payment on their grants, but this is "the classic contractual remedy of specific performance." *Spectrum Leasing*, 764 F.2d at 894. Though plaintiffs insist that they only request "forward-looking, equitable relief," their "creative drafting" of the Complaint cannot "avoid the jurisdictional consequences of the Tucker Act." *See Crowley*, 38 F.4th at 1107. Put simply, I *cannot* order the Government to reinstate contracts and pay money due on them. *See Spectrum Leasing*, 764 F.2d at 894; *California*, 145 S. Ct. at 968–69, 972 ("Government is likely to

17

succeed in showing the District Court lacked jurisdiction to order" that the Department of Education restore the grant program to the "pre-existing status quo" under the APA). Such a request "must be resolved by the Claims Court." *Ingersoll-Rand*, 780 F.2d at 80.

The Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988) does not permit otherwise. *See* Pls.' Opp'n at 20–21. In *Bowen*, the Supreme Court addressed the difference between money damages and equitable relief under APA § 702. *See* 487 U.S. at 893–96; 5 U.S.C. § 702 (APA's waiver of sovereign immunity applies to suits that seek "relief other than money damages"). There, Massachusetts sought judicial review of the Secretary of the Department of Health and Human Service's decision to disallow reimbursement of certain expenses. *Id.* at 882–87. The Supreme Court held that § 702's reference to "other than money damages" invoked the distinction between "damages" that "refers to a sum of money used as compensatory relief'" and "specific remedies" that "'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" *Id.* at 895 (quoting D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)).

"Applying that dichotomy to the case in front of it," the Supreme Court "determined that Massachusetts' suit to enforce a statutory *entitlement* to receive withheld federal grant-in-aid money was a suit for specific relief" and thus was permitted under the APA. *Hubbard v. Adm'r, EPA*, 982 F.2d 531, 536 (D.C. Cir. 1992). That "the entitlement was a cash allotment did not alter the Court's conclusion: 'The State's suit . . . is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate

itself, which happens to be one for the payment of money.'" *Id.* (quoting *Bowen*, 487 U.S. at 900).

*Bowen*, however, does not control here. *See California*, 145 S. Ct. at 968 (distinguishing the relief in *Bowen* from the relief that the district court ordered). Plaintiffs do not seek to enforce a statutory entitlement to payment, but rather enforce and amend their grant agreements with the Government. *See* Compl. at 44–45. An order reinstating plaintiffs' grants and extending their time for performance compensates plaintiffs for EPA's terminations. Moreover, *Bowen* "did not address the 'impliedly forbids' limitation on the APA's waiver of sovereign immunity"—that is, that the Tucker Act bars an APA action in federal district court that is based on contractual claims. *See Transohio*, 967 F.2d at 613. I fail to see how it may order the relief plaintiffs seek under the APA.

Accordingly, plaintiffs have not established the Court's jurisdiction over their contrary-to-law claims, and as such, I deny injunctive relief and grant dismissal as to these claims as well.

## II.    Constitutional Claims

Turning next to the constitutional claims, plaintiffs' attempt to package their challenge to EPA's grant terminations as constitutional violations does not alter the Court's conclusion that the Court of Federal Claims has exclusive jurisdiction here. Plaintiffs lack a cause of action to press both their separation-of-powers and Presentment Clause claims.

In *Dalton v. Specter*, the Supreme Court has rejected the notion "that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." 511 U.S. 462, 472 (1994). The Supreme Court

explained that the Constitution is implicated when the challenged executive acts are taken by "inherent constitutional" authority or when the statute that the Executive Branch relies on for authority is itself unconstitutional. *See id.* at 473 & n.5. Our Circuit interprets *Dalton* as prohibiting a plaintiff from "bring[ing] a freestanding constitutional claim if the underlying alleged violation and claimed authority are statutory." *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2480618, at *1 (D.C. Cir. Aug. 13, 2025).

Plaintiffs' constitutional claims here are predicated on "underlying statutory violations"—that defendants have violated, and are continuing to violate, the Clean Air Act and the IRA. *See id.* at *8; Compl. ¶¶ 175–77, 182–84. Plaintiffs allege that defendants violated the separation of powers by exceeding their statutory authority by not "carry[ing] out ... congressionally mandated programs and ... obligat[ing] and distribut[ing] the funds that Congress appropriated for these programs." *Id.* at ¶ 173; *see also id.* at ¶¶ 166–79. They do not allege that defendants claimed to have acted under "inherent constitutional power." *See Dalton*, 511 U.S. at 473; Compl. ¶ 176 ("EPA did not identify any statutory, regulatory, or constitutional authority to terminate congressionally appropriated funds based on the President's policy preferences."). Plaintiffs also allege defendants violated the Presentment Clause because they "unlawfully amend[ed] the spending provisions of the IRA by ending grant programs mandated by Congress, based on *presidential* policies that are wholly different than *Congress's* directives for the funds and programs." *Id.* at ¶ 183; *see also id.* at ¶¶ 180–85. But claims "alleging that [an agency] has exceed [its] statutory authority are not 'constitutional' claims." *Dalton*, 511 U.S. at 473; *see Glob. Health Council*, 2025 WL 2480618, at *8–9 (plaintiffs lacked a

cause of action under *Dalton* for their separation-of-powers claim because the claim was predicated on underlying statutory violations). Plaintiffs, however, may not circumvent the Tucker Act and the APA's non-reviewability provision by reframing an alleged statutory violation as constitutional claims. *See Validata Chemical Servs. v. U.S. Dep't of Energy*, 169 F. Supp. 3d 69, 89 (D.D.C. 2016) (rejecting attempt to "reframe" an APA claim "as a constitutional due process challenge" to evade the Tucker Act).

Plaintiffs rely on *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) to argue that *Dalton* has no applicability here. *See* Pls.' Opp'n at 13–14 ("*Dalton* merely stands for the proposition that when a statute contains *no limitations* on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available."). *Reich*, however, only addressed the Supreme Court's holding concerning whether a statutory cause of action against the President exists outside the APA. *See Reich*, 74 F.3d at 1330–32; *see also Am. Forest Res. Council v. United States*, 77 F.4th 787, 797 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 1110 (2024) ("*Dalton* has no force where, as here, 'the claim instead is that the presidential action . . . independently violates [another statute].'" (quoting *Reich*, 74 F.3d at 1332)). It does not address the Supreme Court's holding that "statutory claims cannot be transformed into constitutional ones." *Glob. Health Council*, 2025 WL 2480618, at *8. Therefore, *Dalton* controls this action.

In sum, plaintiffs have not stated a cause of action for either of their constitutional clams. As such, I deny injunctive relief and grant dismissal of these claims.

## CONCLUSION

For the foregoing reasons, I **GRANT** defendants' motion to dismiss, **DENY**

plaintiffs' motion for preliminary injunction, and **DENY** plaintiffs' motion for class

certification. An Order consistent with the above accompanies this Memorandum Opinion.


RICHARD J. LEON
United States District Judge