**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 25-5333**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

APPALACHIAN VOICES, et al.,
*Plaintiffs-Appellants,*

v.

UNTIED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF FOR APPELLEES**

———————————

> BRETT A. SHUMATE
>   *Assistant Attorney General*
> YAAKOV M. ROTH
>   *Principal Deputy Assistant
>   Attorney General*
> ERIC D. MCARTHUR
>   *Deputy Assistant Attorney General*
> JOHN BAILEY
>   *Counsel to the Assistant Attorney
>   General*
>   *U.S. Department of Justice*
>   *950 Pennsylvania Avenue NW*
>   *Washington, DC 20530*
>   *(202) 514-6993*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**A.    Parties and Amici**

Plaintiffs-appellants are Appalachian Voices; 2C Mississippi; Air Alliance Houston; Allegheny County; Pennsylvania; Bessemer Historical Society (d/b/a Steelworks Center of the West); City and County of San Francisco, California; City of Sacramento, California; City of Springfield, Massachusetts; Deep South Center for Environmental Justice; Downwinders At Risk; Health Resources in Action; Inter-Tribal Council of Michigan; Kalamazoo County, Michigan; Lowcountry Alliance for Model Communities; Martin Luther King Jr. County, Washington; Native Village of Kipnuk; Parks Alliance of Louisville, Inc.; Pittsburgh Conservation Corps (d/b/a Landforce); PUSH Buffalo; Southwest Renewal Foundation of High Point, Inc., Treasure Island Mobility Management Agency; and WE ACT for Environmental Justice.  Institute for Sustainable Communities was a plaintiff in the district court but did not join appellants' notice of appeal.

Defendants-appellees are the United States Environmental Protection Agency and Lee M. Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency.

Amicus curiae in this Court is the Constitutional Accountability Center.

Amici in the district court were Gather; American Society of Adaptation Professionals; Clean Air Coalition of Western New York; Climate and Energy Project; Connecticut Roundtable on Climate and Jobs; Eastern Rhode Island Conservation District; Emerald Cities Collaborative; Engineers Without Borders; Erie County Restorative Justice Coalition; Greenroots; Healthy Bourbon County Action Team; City of Oakridge; Racial & Environmental Justice Committee; Rhode Island School Recycling Project; Santa Fe Green Chamber of Commerce; Transportation for Massachusetts; and Urban Sustainability Directors Network. Also participating as amici in the district court were the following States and Commonwealth, in addition to the District of Columbia: New York, Massachusetts, California, Arizona, Colorado, Connecticut, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, New Mexico, North Carolina, Oregon, Rhode Island, Vermont, and Washington.

**B.    Rulings Under Review**

The rulings under review were entered in *Appalachian Voices v. Environmental Protection Agency*, No. 1:25-cv-01982 (D.D.C.), by the Honorable Richard J. Leon.  They are the August 29, 2025, order and opinion denying plaintiffs' motion for preliminary injunction and granting the government's motion to dismiss (Dkt. Nos. 98, 99).  The district court's opinion is not published but is available at 2025 WL 2494905.

**C.    Related Cases**

This case was not previously before this Court.  *Sustainability Institute v. Trump*, which is pending in both the United States Court of Appeals for the Fourth Circuit (No. 25-1575) and United States District Court for the District of South Carolina (No. 2:25-cv-2152), raises related issues.

*/s/ John Bailey*
John Bailey

iii

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................vi

INTRODUCTION...............................................................................1

STATEMENT OF JURISDICTION....................................................2

STATEMENT OF THE ISSUES .......................................................3

PERTINENT STATUTES AND REGULATIONS..............................3

STATEMENT OF THE CASE...........................................................3

     A.    Statutory and Factual Background .......................................3

     B.    Procedural Background ........................................................6

SUMMARY OF ARGUMENT ...........................................................9

STANDARD OF REVIEW ...............................................................12

ARGUMENT ...................................................................................12

I.    Plaintiffs' Claims Are Moot...................................................12

II.   The District Court Lacked Jurisdiction over Plaintiffs'
     Challenges to EPA's Termination of Their Grant Agreements............15

     A.    The District Court Correctly Concluded that Plaintiffs'
         APA Claims Are Barred by the Tucker Act.....................15

     B.    Plaintiffs' Counterarguments Are Unpersuasive.............22

     C.    Plaintiffs Cannot Circumvent These Limitations on Review
         by Labeling Their Claims as "Constitutional."................32

CONCLUSION ................................................................................38

iv

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

*Aiken County, In re,*
    725 F.3d 255 (D.C. Cir. 2013) ................................................................ 35, 36, 37

*Albrecht v. Committee on Emp. Benefits of the Fed. Rsrv.*
    *Emp. Benefits Sys.,*
    357 F.3d 62 (D.C. Cir. 2004) ................................................................... 17

*American Pub. Health Ass'n v. National Insts. of Health,*
    145 F.4th 39 (1st Cir. 2025) ..................................................................... 28

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ................................................................................. 29, 30

*California v. U.S. Dep't of Educ.,*
    132 F.4th 92 (1st Cir. 2025) ..................................................................... 17

*Chamber of Com. v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996) ................................................................. 35, 36

*Coalition of MISO Transmission Customers v. FERC,*
    45 F.4th 1004 (D.C. Cir. 2022) ............................................................... 25

*Crowley Gov't Servs., Inc. v. GSA,*
    38 F.4th 1099 (D.C. Cir. 2022) ............................................................... 16, 23, 27

*Dalton v. Specter,*
    511 U.S. 462 (1994) ................................................................................. 33, 34, 35

*Department of Educ. v. California,*
    145 S. Ct. 966 (2025) ................................................................... 7, 10, 17, 18, 29

*Global Health Council v. Trump*:
    153 F.4th 1 (D.C. Cir. 2025), *reh'g en banc denied,*
      No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025) 12, 32, 33, 35, 36
    No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025) .............................. 34

*Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) ................................................... 11, 20, 21, 29

*Kidwell v. Department of the Army, Bd. for Corr. of Mil. Recs.,*
    56 F.3d 279 (D.C. Cir. 1995) ..................................................... 28-29

*Match-E-Be-Nash-She-Wish Band of Pottawatomi*
    *Indians v. Patchak,*
    567 U.S. 209 (2012) ......................................................................... 16

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ......................................... 11, 17, 23, 29

*National Insts. of Health v. American Pub. Health Ass'n,*
    145 S. Ct. 2658 (2025) ......................................... 10, 17, 18, 23, 24

*Reeside v. Walker,*
    52 (11 How.) 272 (1850)............................................................12-13

*Rochester Pure Waters Dist. v. EPA,*
    960 F.2d 180 (D.C. Cir. 1992) ................................................... 12-13

*Spectrum Leasing Corp. v. United States,*
    764 F.2d 891 (D.C. Cir. 1985) ....................................................... 11, 19

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.,*
    980 F.3d 109 (D.C. Cir. 2020) ........................................................ 12

*Sustainability Inst. v. Trump,*
    No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ................... 22

*Thakur v. Trump, --F. 4th--,*
    No. 25-4249, 2025 WL 3760650 (9th Cir. Dec. 23, 2025) ................. 27

*Tucson Airport Auth. v. General Dynamics Corp.,*
    136 F.3d 641 (9th Cir. 1998) ..................................................... 30, 31

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State,*
    770 F. Supp. 3d 155 (D.D.C. 2025) ................................................ 22

*Widakuswara v. Lake,*
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025),
    *vacated in part,* 2025 WL 1521355 (D.C. Cir. May 28, 2025) ....................... 31

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ..................................................................... 32

**U.S. Constitution:**

Art. I, § 8, cl. 1 ................................................................... 36

Art. I, § 9, cl. 7 ................................................................... 36

**Statutes:**

Administrative Procedure Act (APA):
    5 U.S.C. § 702 ............................................................. 30
    5 U.S.C. § 704 ............................................................. 30

Inflation Reduction Act (IRA),
    Pub. L. No. 117-169, 136 Stat. 1818 (2022)
    (codified at 42 U.S.C. § 7438) ........................................3
        42 U.S.C. § 7438(a)-(b) ...........................................3
        42 U.S.C. § 7438(a)(2) ............................................ 4
        42 U.S.C. § 7438(b)(1) ........................................... 34
        42 U.S.C. § 7438(b)(2) ............................................ 4

Tucker Act:
    28 U.S.C. § 1491(a) ..................................................... 2
    28 U.S.C. § 1491(a)(1) ............................................... 16

Pub. L. No. 119-21, 139 Stat. 72 (2025)...............................6

28 U.S.C. § 1291 .............................................................. 2

28 U.S.C. § 1331 .............................................................. 2

**Regulatory Materials:**

2 C.F.R. § 200.343 ........................................................... 13

2 C.F.R. § 200.343(a) ....................................................... 14

2 C.F.R. § 200.472 ....................................................... 13, 14

OMB Circular No. A-11, *Preparation, Submission, and Execution of the*
    *Budget* (2024) ........................................................... 14

Exec. Order No. 14,151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8339 (Jan. 29, 2025) ................................................................. 4-5, 5

Exec. Order No. 14,154, *Unleashing American Energy*, 90 Fed. Reg. 8353 (Jan. 29, 2025) ......................................................... 4

**Legislative Material:**

H.R. 1, 119th Cong. (2025) .......................................................................6, 21

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| CAA | Clean Air Act |
| EPA | Environmental Protection Agency |
| JA | Joint Appendix |
| OMB | Office of Management and Budget |

## INTRODUCTION

This appeal arises from the Environmental Protection Agency's (EPA's) termination of grants awarded under the Environmental and Climate Justice Block Grant program, a funding initiative Congress established in 2022 as part of the Inflation Reduction Act (IRA). After the President issued Executive Orders directing agencies to ensure that, where legally permissible, federal funds are not being used to support activities that are inconsistent with the administration's policy priorities, EPA paused and then terminated all grants awarded under the program. Plaintiffs, who received funds under the affected grants, challenged the government's funding decisions in district court under the Administrative Procedure Act (APA).

While this case was pending, Congress rescinded the unobligated funds appropriated for the Environmental and Climate Justice Block Grant program. Because plaintiffs seek an order compelling EPA to obligate or otherwise make available those rescinded funds, the Court can no longer grant meaningful relief. The appeal is therefore moot.

Even if this dispute were live, the district court correctly dismissed for lack of jurisdiction. Plaintiffs' claims challenging the termination of their

funding agreements present contractual disputes that must be brought in the Court of Federal Claims, not in district court. That conclusion comports with recent rulings from the Supreme Court—which has now twice made clear that such grant termination claims may not be brought through the APA—and applies settled decisions from this Court.

Plaintiffs provide no sound basis for distinguishing those controlling authorities, nor can they evade it by recasting their statutory objections as constitutional claims. The judgment should be affirmed.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331, JA__ (Compl. ¶ 17), but the district court concluded that it lacked jurisdiction because plaintiffs' claims were contract claims that should have been pursued in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a). The district court granted the government's motion to dismiss and denied plaintiffs' motion for preliminary injunction on August 29, 2025. JA__ (Dkt. No. 99). Plaintiffs filed a timely notice of appeal on September 16, 2025. JA__ (Dkt. No. 100). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

2

## STATEMENT OF THE ISSUES

The issues presented are:

1.  Whether Congress' rescission of unobligated Environmental and Climate Justice Block Grant funds moots plaintiffs' claims;

2.  Whether plaintiffs' APA claims challenging EPA's decision to terminate their grant agreements are barred by the Tucker Act; and

3.  Whether EPA's decision to terminate the grant agreements violates the Constitution.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory and Factual Background

1.  In 2022, Congress enacted Section 138 of the Clean Air Act as part of a reconciliation bill that appropriated $2.8 billion for Environmental and Climate Justice Block Grants.  *See* IRA, Pub. L. No. 117-169, 136 Stat. 1818, 2078 (2022) (codified at 42 U.S.C. § 7438).  Congress provided that the EPA Administrator "shall use" the funds "to award grants" to eligible entities "to carry out" specified activities "that benefit disadvantaged communities, as defined by the Administrator."  42 U.S.C. § 7438(a)-(b).  Eligible activities

3

include, for example, "investments in low- and zero-emission and resilient

technologies"; "mitigating climate and health risks from urban heat islands,

extreme heat, wood heater emissions, and wildfire events"; "climate

resiliency and adaptation"; and "facilitating engagement of disadvantaged

communities in State and Federal advisory groups, workshops, rulemakings,

and other public processes." *Id.* § 7438(b)(2)(A)-(E).  Congress also

appropriated $200 million "to provide technical assistance to eligible entities

related to" the Environmental and Climate Justice Block Grant program. *Id.*

§ 7438(a)(2).

EPA then awarded hundreds of grants and provided periodic

reimbursement to grant recipients.  JA__ (Compl. ¶¶ 10-11).  Plaintiffs are

nonprofit organizations, Tribes, local governments, and higher education

institutions that each received one or more Environmental and Climate

Justice Block Grants.  JA__ (Compl. ¶ 21).

**2.**  In January 2025, the President issued two Executive Orders

implicating the Environmental and Climate Justice Block Grant program.

First, Executive Order 14,154, 90 Fed. Reg. 8353 (Jan. 29, 2025), titled

*Unleashing American Energy*, declares the policy of the United States to

encourage certain "energy exploration and production," guarantee the

4

accessibility of "an abundant supply of reliable energy," and ensure that no federal funding is "employed in a manner contrary to principles outlined in this section, unless required by law," *id.* § 2(a), (c), (i), 90 Fed. Reg. at 8353, 8354. The Executive Order further instructs agencies to "immediately pause the disbursement of funds" under the IRA to assess "consistency with the law and the policy outlined in" the Executive Order. *Id.* § 7(a), 90 Fed. Reg. at 8357. The second, Executive Order 14,151, 90 Fed. Reg. 8339 (Jan. 29, 2025), titled *Ending Radical and Wasteful Government DEI Programs and Preferencing*, directs agencies to terminate, "to the maximum extent allowed by law, all . . . 'equity-related' grants or contracts," *id.* § 2(b)(i), 90 Fed. Reg. at 8339. The order also instructs agencies to provide OMB with a list of all grant recipients who received funding "to provide or advance . . . 'environmental justice' programs, services, or activities." *Id.* § 2(b)(ii)(C), 90 Fed. Reg. at 8339-40.

    Soon after the President's Executive Orders, EPA paused the disbursement of funds to recipients of Environmental and Climate Justice Block Grants pending a review of funding for consistency with the Administration's policy priorities. JA__ (Compl. ¶ 13). Between February and May 2025, after "conduct[ing] an individualized review," EPA

terminated each grant awarded under the Environmental and Climate

Justice Block Grant program.  JA__ (Dkt. No. 1-4 at 4).  It then sent

notification letters to grant recipients explaining the reasons for termination.

*See, e.g.*, JA__ (Dkt. No. 1-4 at 56) (sample termination letter).

**3.**  In July 2025, Congress enacted and the President signed new

legislation that rescinded funding for the Environmental and Climate Justice

Block Grant program.  The law rescinded "[t]he unobligated balances of

amounts made available to carry out section 138 of the Clean Air Act."  H.R.

1, 119th Cong. § 60016 (2025) (enacted as Pub. L. No. 119-21, 139 Stat. 72

(2025)).

### B.    Procedural Background

**1.**  In June 2025, Plaintiffs brought a putative class action in district

court challenging the grant terminations as contrary to law or arbitrary and

capricious under the APA.  JA__ (Compl. ¶¶ 186-213).  Plaintiffs also claimed

the termination of the Environmental and Climate Justice Block Grant

program violates the separation of powers and the Presentment clause.

JA__ (Compl. ¶¶ 166-85).  Among other relief, plaintiffs sought an injunction

"[r]equiring EPA to reinstate all grant awards" made under the

Environmental and Climate Justice Block Grant program.  JA__ (Compl., Prayer for Relief (E)).

Plaintiffs moved for a preliminary injunction, seeking to compel EPA to "immediately resume the processing, disbursement, and payment of Plaintiffs' and Class Members' grants."  JA__ (Dkt. No. 29-2 at 1).  The government then moved to dismiss.  JA__ (Dkt. No. 66).

**2.**  The district court granted the government's motion to dismiss, holding that it lacked jurisdiction to hear the APA claims.  *See* JA__ (Dkt. 98 at 8-19).  In particular, the court explained that an "action against the United States [which] is *at its essence* a contract claim" must be brought in the Court of Federal Claims under the Tucker Act, not in district court under the APA.  JA__ (Dkt. No. 98 at 9).  Applying this Court's precedent, the court held that plaintiffs' APA claims are essentially contractual, explaining that the court "simply . . . *cannot* order the Government to reinstate contracts and pay money due on them"—rather, "[s]uch a request must be resolved the Claims Court."  JA__ (Dkt. No. 98 at 17-18).

The district court reasoned that plaintiffs' arbitrary-and-capricious claim "closely aligns with the claim at issue in" *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), where the Supreme Court

7

ruled that jurisdiction over cases involving grant terminations likely lies in the Court of Federal Claims. JA__ (Dkt. No. 98 at 12). The court reached the same conclusion on the contrary-to-law claims, explaining that any asserted "right to payments arose only upon creation and satisfaction of its contracts with the government" and did not "exist independently of those contracts." JA__ (Dkt. No. 98 at 16) (alterations and quotations omitted). Moreover, the remedy that plaintiffs sought—namely, "a court order instructing the Government to pay their grant awards and extend the period of performance specified in their grant agreements"—equates to "the classic contractual remedy of specific performance." JA__ (Dkt. No. 98 at 17) (quotations omitted).

The district court likewise concluded that plaintiffs' constitutional claims were subject to dismissal. JA__ (Dkt. No. 98 at 19-21). The court reasoned that plaintiffs' constitutional claims are "predicated on underlying statutory violations," and "claims alleging that an agency has exceed[ed] its statutory authority are not 'constitutional' claims." JA__ (Dkt. No. 98 at 20). At bottom, the district court rejected plaintiffs' attempt to "circumvent the Tucker Act and the APA's non-reviewability provision by refra[m]ing an

8

alleged statutory violation as constitutional claims." JA__ (Dkt. No. 98 at 21).

The district court thus dismissed the case and denied plaintiffs' motion for a preliminary injunction. JA__ (Dkt. No. 99). Plaintiffs later moved for an injunction pending appeal, which the district court also denied. JA__ (Dkt. No. 107).

## SUMMARY OF ARGUMENT

**I.** This case is moot because Congress has expressly rescinded the very funds plaintiffs seek to recover. After EPA terminated plaintiffs' grant agreements, EPA's sole remaining legal obligation was to reimburse allowable pre-termination and closeout costs. Under settled appropriations law, the balance of the awards thus became unobligated upon termination. Congress then expressly rescinded all unobligated funds appropriated for the Environmental and Climate Justice Block Grant program.

EPA has already agreed to reimburse plaintiffs for all allowable costs incurred before termination, as well as reasonable closeout costs. What plaintiffs seek now—disbursement of the remaining, unobligated portions of their awards—are the very funds that Congress has withdrawn. That is relief that this Court cannot provide. A court cannot order the obligation of,

9

or otherwise make available, funds that Congress has rescinded. Because a decision on the merits would have no effect on the parties' rights, the case presents no live controversy and must be dismissed as moot.

**II. A.** Even if the case were not moot, the district court correctly concluded that it lacked jurisdiction over plaintiffs' claims. The heart of plaintiffs' complaint challenges EPA's termination of their grant agreements and seeks relief requiring the government to resume payment under those agreements. Such claims are quintessentially contractual and fall within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act. The APA's limited waiver of sovereign immunity does not apply where, as here, another statute impliedly forbids the relief sought.

The Supreme Court has twice recently stayed district-court orders that purported to void grant terminations in similar circumstances, concluding that the government was likely to succeed in demonstrating that the district court lacked jurisdiction over claims seeking such relief. *National Insts. of Health v. American Pub. Health Ass'n* (*NIH*), 145 S. Ct. 2658 (2025); *Department of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam).

10

Similarly, this Court has long held that plaintiffs may not transform the contractual nature of their dispute—and thus avoid the jurisdictional and remedial limitations of the Tucker Act—by recasting their claims as involving arbitrary-and-capricious decisionmaking or as involving agency action that is contrary to statute. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77-80 (D.C. Cir. 1985); *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 & n.34 (D.C. Cir. 1982). Here, as in those cases, plaintiffs have brought claims to enforce a contractual obligation to make payments, while the only source of plaintiffs' asserted rights to the funds are the grant agreements themselves.

Plaintiffs' effort to reframe this case as a challenge to a "policy level" decision, rather than to the termination of their individual grants, is foreclosed both by precedent and by the complaint itself. Plaintiffs have simply aggregated objections to discrete termination decisions and rebranded them as a programmatic challenge. Properly understood, the claims sound in contract and belong in the Court of Federal Claims.

**B.** Nor can plaintiffs circumvent these jurisdictional limits by relabeling their claims as "constitutional," as the district court correctly

11

recognized. Claims that executive officials exceeded statutory authority are statutory claims, not freestanding constitutional ones. This Court recently applied that principle in *Global Health Council v. Trump*, rejecting materially identical separation-of-powers and Presentment Clause theories. *Global Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025), *reh'g en banc denied*, No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025). Plaintiffs' supposed constitutional claims depend entirely on their underling statutory arguments and thus fail for that reason.

## STANDARD OF REVIEW

The district court's dismissal of plaintiffs' complaint is reviewed de novo. *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 114 (D.C. Cir. 2020).

## ARGUMENT

## I. Plaintiffs' Claims Are Moot.

After EPA terminated plaintiffs' grant agreements, EPA's only remaining legal obligation was to reimburse allowable pre-termination costs and reasonable closeout expenses. Congress then enacted legislation that expressly and categorically rescinded all unobligated funding appropriated for the Environmental and Climate Justice Block Grant program. Because

"[i]t is beyond dispute that a federal court cannot order the obligation of funds for which there is no appropriation," this Court cannot provide plaintiffs with any meaningful relief. *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992) (citing *Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1850)).  Plaintiffs' claims are thus moot. *See Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024).

All agree that plaintiffs' agreements had been "formally terminate[d]" by June 2025.  JA__ (Compl. ¶ 114).  And there is no dispute that, following these terminations, Congress expressly rescinded "[t]he unobligated balances of amounts made available to carry out" the Environmental and Climate Justice Block Grant program.  H.R. 1, 119th Cong. § 60016 (2025).  The dispositive question for mootness is thus narrow and purely legal: whether the funds initially obligated to plaintiffs under their grant agreements became "unobligated" upon termination.

Upon termination, the only legal obligation remaining on the grants was for any allowable costs incurred before termination and reasonable closeout expenses, as stated in the termination letters and set out in OMB regulations. *See* JA__ (Dkt. No. 1-4 at 56) (sample termination letter) (citing 2 C.F.R. §§ 200.343, 200.472).  Beyond those limited amounts, EPA had no

13

continuing legal obligation—contractual or otherwise—to disburse funds to plaintiffs.  The remaining amounts initially awarded to plaintiffs (*i.e.*, the funds plaintiffs now ask this Court to restore) were thus "unobligated" when Congress passed the July rescission law.

Federal appropriations law defines "obligation" as "a legally binding agreement that will result in outlays, immediately or in the future."  OMB, OMB Circular No. A-11, Preparation, Submission, and Execution of the Budget § 20.5 at 20 (2024).  Thus, when an agency "award[s] a grant . . . that require[s] the Government to make payments to the public," it "incur[s] an obligation."  *Id.*  Of course, that obligation endures only so long as the legally binding agreement that created it remains in force.  Accordingly, when an agency terminates a "legally binding agreement" that obligated grant funds, *id.*, the quantum of funds that remain obligated is the amount necessary to reimburse recipients for "costs result[ing] from" expenditures "which were properly incurred by the recipient . . . before the effective date of . . . termination," 2 C.F.R. § 200.343(a), as well as termination and closeout costs, *see id.* § 200.472.  All remaining funds are no longer subject to any continuing legal commitment.  The remaining portion of the award therefore necessarily

14

becomes "unobligated" upon termination, as there is no longer any legal obligation committing those funds to the terminated grant recipient.

In short, once EPA terminated plaintiffs' grant agreements, any funds beyond allowable pre-termination and closeout costs ceased to be legally obligated. Congress then rescinded those unobligated balances, extinguishing the only relief plaintiffs seek—access to the full amounts of their terminated awards. Because courts lack authority to order the obligation or payment of funds that Congress has withdrawn, no live controversy remains. A decision on plaintiffs' claims "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pub. Citizen*, 92 F.4th at 1128. The case is therefore moot, and the Court should affirm on that basis. Alternatively, even if Congress' rescission of the funds did not moot plaintiffs' claims, it would independently foreclose relief on the merits.

## II.   The District Court Lacked Jurisdiction over Plaintiffs' Challenges to EPA's Termination of Their Grant Agreements.

### A.   The District Court Correctly Concluded that Plaintiffs' APA Claims Are Barred by the Tucker Act.

Under the Tucker Act, Congress has vested the Court of Federal Claims with exclusive jurisdiction over claims of the sort asserted here: that

15

the government has wrongfully terminated contracts.  The essence of
plaintiffs' complaint is that the government should not have cancelled their
grant agreements and must continue performing those contracts.  That is a
contractual dispute falling squarely within the Tucker Act's jurisdictional
scheme, as the Supreme Court has recently and repeatedly made clear.

1.  The federal government is "immune from suit in federal court
absent a clear and unequivocal waiver of sovereign immunity." *Crowley
Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022).  And although
the APA provides "a limited waiver of sovereign immunity for claims against
the United States" seeking relief other than money damages, *id.*, that waiver
does not apply "if any other statute that grants consent to suit expressly or
impliedly forbids the relief which is sought," *Match-E-Be-Nash-She-Wish
Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quotation
omitted).  That important carve-out "prevents plaintiffs from exploiting the
APA's waiver to evade limitations on suit contained in other statutes." *Id.*

In particular, when a party seeks to require the government to
continue to perform its obligations under a contract, the proper remedy is a
suit under the Tucker Act, not the APA.  The Tucker Act provides that the
"United States Court of Federal Claims shall have jurisdiction to render

16

judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). As this Court has explained, "the Tucker Act impliedly forbids" the bringing of "contract actions" against "the government in a federal district court." *Albrecht v. Committee on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004). To determine whether "a particular action" is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, this Court has looked at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (quotation omitted).

The Supreme Court has twice recently stayed district-court orders that purported to set aside the termination of grant agreements, concluding that the government was likely to succeed in showing that the Tucker Act grants the Court of Federal Claims jurisdiction over such suits. *See NIH*, 145 S. Ct. 2658 (2025); *Department of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam). In *California*, a number of states challenged the Department of Education's termination of various education-related grants, the district court temporarily enjoined the terminations, and the First

17

Circuit denied a motion to stay that injunction. *See California v. U.S. Dep't of Educ.*, 132 F.4th 92 (1st Cir. 2025). The Supreme Court granted the government's request for emergency relief, reaffirming that "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered here." *California*, 145 S. Ct. at 968 (quotation omitted).

Soon after, the Supreme Court issued a stay in *NIH*, reiterating *California*'s reasoning that the APA "does not provide [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *NIH*, 145 S. Ct. 2658. Twice over, the Supreme Court has made clear that challenges to agency "decisions terminating existing" contracts—including challenges brought "under the [APA]"—"belong in the Court of Federal Claims." *Id.* at 2661 (Barrett, J., concurring in the partial grant of the application for stay); *see also id.* at 2663-64 (Gorsuch, J., joined by Kavanaugh, J., concurring in part and dissenting in part) (similar).

**2.** As the district court recognized, it lacked jurisdiction over plaintiffs' claims here for the same reasons. As in *California* and *NIH*, plaintiffs in this case allege that the government has violated "a contractual obligation to pay

18

money" assertedly embodied in their grant agreements. *California*, 145 S. Ct. at 968. Plaintiffs' complaint makes clear that their primary issue is that the agency unlawfully terminated the grant agreements that funded their various activities. *See, e.g.*, JA__ (Compl. ¶ 159) (alleging that each plaintiff "has experienced the same injury (the termination of their grants)"); JA__ (Compl. ¶ 157) (plaintiffs "seek common declaratory and injunctive relief concerning the legality of Defendants' mass termination actions"). And as in *California* and *NIH*, the grants here were awarded by EPA to plaintiffs from a generalized appropriation, which means that the source of their purported rights to payment can only be the grant agreements themselves, not any statute or regulation—no statute or regulation entitles *these* plaintiffs to public funds.

In this respect, this case is controlled by a pair of this Court's cases applying the *Megapulse* framework long before the Supreme Court's guidance in *California* and *NIH*. In *Spectrum Leasing Corp. v. United States*, a government contractor encountered difficulties performing the contract; the government invoked a liquidated damages provision and, as a result, withheld payments under the contract. 764 F.2d 891, 892 (D.C. Cir. 1985). The contractor sued, claiming that government violated statutory

19

procedures in withholding the payments. *Id.* This Court held that the action belonged in the Court of Federal Claims under the Tucker Act, explaining that the asserted "substantive right" to monetary payments was "created in the first instance by the contract," not by the relevant statute, which "confer[red] no such right in the absence of the contract itself." *Id.* at 894. The contractor's demand for payments presented a "contract dispute" because the contractor sought to enforce a right that "arose only upon creation and satisfaction of its contract with the government; in no sense did it exist independently of that contract." *Id.*

And in *Ingersoll-Rand Co. v. United States*, the government terminated a contract for convenience pursuant to a regulation incorporated into the contract. 780 F.2d 74, 75 (D.C. Cir. 1985). The plaintiff challenged that termination as arbitrary and capricious and as contrary to multiple regulations. *See id.* This Court determined that, notwithstanding those statutory and regulatory allegations, "the essential rights at stake . . . [were] contractual." *Id.* at 77. This Court explained that "it [was] possible to conceive of [the] dispute as entirely contained within the terms of the contract." *Id.* at 78. The fact that "the termination also arguably violate[d] certain other regulations" and that plaintiff "allege[d] only a violation of the

20

regulations" did not "change the essential character of the action." *Id.* And the plaintiff's request for "an order reinstating the original award of the contract" similarly sounded in contract. *Id.* at 79-80.

*Spectrum* and *Ingersoll-Rand* teach that plaintiffs' claims are essentially contractual, even if dressed up in statutory or constitutional garb. As in *Spectrum Leasing*, the only possible source of plaintiffs' purported right to payments from the government are the grant agreements themselves. As in *Ingersoll-Rand*, the "essential rights at stake here are contractual" despite plaintiffs' "efforts to cast its complaint otherwise." 780 F.2d at 77.

The harm that plaintiffs alleged and the relief they sought from the district court further underscores that this entire dispute is, at bottom, contractual. The complaint is focused on plaintiffs' loss of federal funds. *See, e.g.*, JA__ (Compl. ¶ 191) (alleging "serious reliance interests of Plaintiffs . . . on those funds" cancelled by EPA); JA__ (Compl. ¶ 82) ("The funding for these projects is now on hold due to the disruption of the grant[s]."); JA__ (Prayer for Relief (G)) (relief must account for "the time they lost access to their grant funding"). To remedy that asserted harm, plaintiffs sought an order declaring unlawful the agency's termination of the grant agreements

21

and directing the government to "immediately resume the processing, disbursement, and payment of Plaintiffs' . . . grants." JA__ (Dkt. No. 29-2 at 1). In other words, "[s]tripped of its equitable flair," the heart of plaintiffs' complaint seeks one thing: an order requiring "the Government to keep paying up" pursuant to its contractual obligations under the grants. *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025). The district court thus lacked jurisdiction over these claims.

## B.    Plaintiffs' Counterarguments Are Unpersuasive.

**1.** To escape *California* and *NIH*, plaintiffs attempt to rebrand this case as a "challenge to a policy-level agency decision," rather than what it plainly is: a challenge to the termination of their individual grants. Pls. Br. 19. That sort of relabeling does not alter the jurisdictional analysis. The Fourth Circuit has recognized as much in the context of this very grant program. *See Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1 (4th Cir. June 5, 2025) (staying district court order requiring EPA to restore terminated Environmental and Climate Justice Block Grants). Otherwise, any individual grant-termination dispute could proceed in district court simply by recasting it as an unlawful partial termination of the "program" that funded the grant. In other words, for jurisdictional

22

purposes, there is no meaningful difference between an allegation that an agency illegally eliminated an entire grant program and a claim that it unlawfully eliminated a portion of that program. And because nearly any grant-termination dispute could be reframed as the termination of some portion of a "program," accepting plaintiffs' theory would create a sweeping end run around the Tucker Act. *Cf. Megapulse*, 672 F.2d at 967 & n.34.

As the district court rightly recognized, plaintiffs have simply "bundled together EPA's discrete actions" and "crafted [their] claims as programmatic challenges instead of challenges to EPA's individual grant terminations." JA__ (Dkt. No. 98 at 13). And plaintiffs may not evade the Tucker Act by styling their suit as "a programmatic challenge to EPA's decision to cease a contractual relationship with them." *Id.* This Court has repeatedly rejected such efforts, emphasizing that litigants may not engage in "creative drafting of complaints . . . to avoid the jurisdictional consequences of the Tucker Act." *Crowley*, 38 F.4th at 1107.

Nothing in Justice Barrett's concurrence in *NIH* suggests otherwise. There, Justice Barrett distinguished between (1) challenges to the government's termination of grant agreements, which belong in the Court of Federal Claims, and (2) challenges to "internal guidance documents

describing [agency] priorities," which could proceed under the APA. *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). That distinction offers plaintiffs no help here. Unlike in *NIH*, the supposed "policy guidance" plaintiffs' identify—"EPA's directive to eliminate the Section 138 grant program as a whole," Pls. Br. 24—is not a freestanding agency action. It is inseparable and indistinct from EPA's alleged decision to "terminate[] the grants *en masse*," JA__ (Compl. ¶ 14). After all, the "program" plaintiffs want this Court to restore is merely a now-rescinded appropriation earmarked for grant funding. Plaintiffs do not allege the existence of any "distinct agency actions" that could independently be set aside in district court. *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring).

Even if plaintiffs had plausibly alleged a separate, standalone agency action preceding the terminations, plaintiffs would lack standing to bring such a challenge in the first place. Vacatur of such hypothetical guidance would not undo the grant terminations or restore funding—something plaintiffs now seemingly concede. *See* Pls. Br. 24-25; *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). An order setting aside unwritten guidance that has no independent legal effect on plaintiffs' awards would not redress their alleged injuries.

24

**2.** Perhaps for that reason, plaintiffs attempt on appeal to refashion their injury altogether.  They now claim that vacatur of an unwritten EPA directive would remedy a supposed harm of being "walled off from an entire category of projects for which [they are] qualified, prepared, and eager to compete."  Pls. Br. 25 (quoting *Coalition of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1016 (D.C. Cir. 2022)).  But that theory of injury appears nowhere in the complaint.  Plaintiffs never alleged that they were injured by the loss of future application opportunities.  This is unsurprising, as the complaint is crystal clear about what plaintiffs actually want, and that is reinstatement of their terminated agreements.  *See, e.g.*, JA__ (Compl. ¶ 48) ("the relief sought here will allow [plaintiffs] to continue work on their awarded grant projects").  Thus, having pled an injury tied exclusively to the loss of their terminated awards and relief aimed at restoring them, plaintiffs would lack standing to mount a programmatic challenge based on loss of future award opportunities.

Moreover, and more fundamentally, even if plaintiffs could swap their alleged injuries on appeal, such a competition-based injury is no longer redressable after Congress repealed the Environmental and Climate Justice Block Grant program.  There are no longer any appropriated funds for which

plaintiffs could complete.  Thus, this Court could not require EPA to award new Environmental and Climate Justice Block Grants or otherwise require that plaintiffs be permitted to compete for new awards, even if plaintiffs had requested that relief in their complaint.  The only live dispute here is whether plaintiffs are entitled to the full award amount of the terminated grant agreements, or only to their allowable pre-termination and closeout costs.  That dispute is fundamentally contractual.

3.  Relatedly, plaintiffs' effort to apply the *Megapulse* framework to a complaint other than the one actually before the Court is misguided and improper.  Much of plaintiffs' argument is premised on the repeated—and inaccurate—refrain that their complaint does "not seek to enforce any contract."  Pls. Br. 31.  Again, the operative complaint is singularly focused on alleged financial harms from lost grant funding and expressly requests relief requiring the government to "reinstate all grant awards . . . that were terminated."  JA__ (Compl., Prayer for Relief (E)); *see also, e.g.*, JA__ (Compl. ¶ 157) ("The legality of Defendants' mass terminations is a common question capable of resolution in one stroke.  The [class] seek[s] common and declaratory and injunctive relief concerning the legality of Defendants' mass termination actions[.]"); *see supra* at 18-19, 21-22.  The contractual nature of

26

the asserted right to payment, and of the relief sought to enforce it, is "clear enough on the face of the complaint." *Crowley*, 38 F.4th at 1108; *see also Thakur v. Trump*, -- F.4th --, No. 25-4249, 2025 WL 3760650, at *3 (9th Cir. Dec. 23, 2025) (staying preliminary injunction requiring agencies to reinstate grants because the plaintiffs' "rights and remedies, as alleged," are contractual under *NIH*).

Plaintiffs may not amend their complaint through appellate briefing, nor may they invite this Court to recharacterize their claims based on a newly professed "understanding" of "the proper scope of relief." Pls. Br. 24. The complaint at issue is plaintiffs' "original, pre-*NIH*" pleading, Pls. Br. 33 n.11—and under that complaint, the claims sound in contract and fall within the exclusive jurisdiction of the Court of Federal Claims.

**4.** Regardless, plaintiffs' application of the *Megapulse* framework fails on its own terms. They claim that they "seek specific forward-looking relief" that "does not require this Court to look at, let alone interpret, the terms of" the grant agreements. Pls. Br. 29, 33. But that is the same flawed reasoning that the First Circuit relied on in *NIH*, as to which the Supreme Court subsequently granted a stay. The First Circuit concluded that the Supreme Court's decision in *California* was distinguishable because the district court

27

"did not award past due sums, but rather provided declaratory relief" and issued relief "under the APA independent of any contractual language." *American Pub. Health Ass'n v. National Insts. of Health*, 145 F.4th 39, 50, 52 (1st Cir. 2025).

In issuing a stay, the Supreme Court thus made clear that the distinction between past and future payments and the mere invocation of the APA, as opposed to contract conditions, make no difference to the applicability of the Tucker Act. That conclusion controls this case. The relevant point is that the dispute sounds in contract because the grant agreements create the asserted right to payment in the first instance and any obligation to continue making payments would have to come from the grant terms.

More specifically, plaintiffs fail to rebut the district court's conclusion that the "the source of plaintiffs' rights is contractual" because any entitlement to payment "arose only upon creation and satisfaction of [their] contracts." JA__ (Dkt. No. 98 at 15-16) (citation omitted). Their broad appeal to statutory and constitutional rights to "be free from government action beyond congressional authority" does not work. Pls. Br. 28-29 (citation omitted). Again, this Court has long rejected such efforts to evade

the Tucker Act through "creative drafting." *Kidwell v. Department of the Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995). Plaintiffs cannot recast a contractual dispute as a non-contractual one "merely by alleging violations of regulatory or statutory provisions." *Ingersoll-Rand*, 780 F.2d at 77. Any contractual claim could be recharacterized as an arbitrary-and-capricious claim, for example, *see Megapulse*, 672 F.2d at 967 & n.34, so a general right to be free from unlawful government action is no substitute for a substantive right on which plaintiffs' claims actually depend.

Nor have plaintiffs undermined the district court's conclusion that their request for "continued payment on their grants" is essentially contractual. JA__ (Dkt. No. 98 at 17). As explained above, that conclusion necessarily follows from the operative complaint itself. *See supra* at 21-22, 26. Plaintiffs may not, through appellate briefing, disavow the fundamentally contractual nature of the injury they allege or the relief they seek.

**5.** Plaintiffs fare no better by repeatedly invoking inapposite cases. They rely heavily on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), *see* Pls. Br. 32-35—a case that the Supreme Court expressly distinguished in *California. See* 145 S. Ct. at 968. Indeed, *Bowen* did not involve a contract claim at all, let alone the relevant limitation in the APA. Instead, *Bowen*

29

involved two separate provisions: (1) the provision of 5 U.S.C. § 702 precluding APA claims for "money damages," and (2) the provision of 5 U.S.C. § 704 precluding APA claims where there is another "adequate remedy in a court" for an agency action. *Bowen* held that a State's APA claim that certain services qualified for reimbursement under the Medicaid program was not a claim for "money damages," 487 U.S. at 891-901, and that a Tucker Act suit premised on an ostensibly money-mandating statute was not an alternative "adequate remedy." *Id.* at 901-08. Nothing in *Bowen* addresses the separate bar at issue here on suits "expressly or impliedly forbid[den]" by statutes like the Tucker Act. 5 U.S.C. § 702.

Other courts have corrected the same error that plaintiffs make here. The Ninth Circuit has clarified that because "[t]he APA's waiver of sovereign immunity . . . contains several limitations," a litigant must satisfy each one: the litigant must establish that "its claims are not for money damages," that "an adequate remedy for its claims is not available elsewhere," and that "its claims do not seek relief expressly or impliedly forbidden by another statute." *Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998). Each condition is a separate and independent limitation on the cause of action, and a failure to show any one of those conditions is

30

fatal. *See id.* Thus, the Ninth Circuit held that the Tucker Act precluded an APA claim even though the claim was not for money damages and an adequate remedy was allegedly unavailable elsewhere. *See id.* at 645-47. Plaintiffs here mistakenly conflate distinct limitations.

Nor is this case similar to *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) (per curiam), *vacated in part*, 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc) (per curiam), in the relevant respect. Regardless whether the en banc Court's stay decision—which predated the Supreme Court's decision in *NIH*—reflected how that case should ultimately come out on the merits, that case involved allegations that the relevant statutes "required allocation of funds to [the] specific, named" plaintiffs. *Widakuswara*, 2025 WL 1288817, at *11 (Pillard, J., dissenting). That allowed the plaintiffs there to contend that they had a right to funds that was antecedent to, and independent of, any contract. In this case, it is only the relevant contractual instruments, not any statute, that entitle any particular plaintiff to receive federal funds (which is the only relief that would remedy the injuries actually alleged).

31

**C.    Plaintiffs Cannot Circumvent These Limitations on Review by Labeling Their Claims as "Constitutional."**

**1.**  As the district court recognized, and as this Court recently confirmed, plaintiffs' attempt to recast their objections to EPA's grant terminations as freestanding constitutional claims is "foreclosed . . . by *Dalton v. Specter.*"  *Global Health Council v. Trump*, 153 F.4th 1, 13 (D.C. Cir. 2025), *reh'g en banc denied*, No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025).  *Dalton* makes clear that allegations that an official has acted in opposition to a statute are statutory claims—not "'constitutional' claims" that can be asserted through a direct cause of action.  *Dalton v. Specter*, 511 U.S. 462, 473 (1994).

As the Supreme Court explained, not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution."  *Dalton*, 511 U.S. at 472.  Rather, the Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority."  *Id.* (collecting cases).  The Constitution is implicated, for example, if executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution.  *See Dalton*, 511

32

U.S. at 473 & n.5. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims" that can be asserted through a direct cause of action. *Id.* at 473.

Here, plaintiffs' asserted constitutional claims are really "statutory one[s]," *Dalton*, 511 U.S. at 474, as they assert that EPA officials have exceeded their statutory authority. Any statutory claim could be recharacterized as a violation of the constitutional "separation of powers," JA__ (Compl. ¶¶ 166-79), or as "amend[ing]" the relevant statutes in violation of the Presentment Clause, JA__ (Compl. ¶¶ 180-85)—but that is precisely the sleight of hand rejected in *Dalton*. *See also Global Health Council*, 153 F.4th at 14 ("plaintiffs would otherwise be able to avoid statutory limits on review by reframing any alleged statutory violation by the President as a constitutional one").

The Court's recent application of *Dalton* to materially similar claims "controls this case." *Global Health Council*, 153 F.4th at 17. In *Global Health Council*, the Court considered whether the plaintiffs had a cause of action to press their "claim that the government violated separation-of-powers principles by impounding" foreign aid funds in violation of the relevant appropriations act, the Impoundment Control Act, and the Anti-

33

Deficiency Act. *Id.* at 13. Applying *Dalton*, the panel held that the "dispute is fundamentally statutory because the alleged constitutional violation is predicated on the underlying alleged statutory violations." *Id.* at 15 n.11.

So too here. Plaintiffs' supposed constitutional claim is that EPA "usurp[ed] Congress's own constitutional authority by eliminating an entire *congressionally mandated* program." Pls. Br. 52 (emphasis added) (arguing *Global Health Council* is distinguishable on that basis). And they do not allege that EPA claimed to have acted under "inherent constitutional power." *Dalton*, 511 U.S. at 473. Both the separation-of-powers and Presentment Clause claims thus depend on whether EPA violated statutory requirements by terminating specific grants funded by the Environmental and Climate Justice Block Grant program (for which Congress has since rescinded funding). *See, e.g.*, JA__ (Compl. ¶ 175) (alleging separation-of-powers violation because 42 U.S.C. § 7438(b)(1) provides that EPA "'shall' award grants for certain activities"); JA__ (Compl. ¶ 182). Those "claim[s] turn . . . on whether the relevant appropriations were mandatory, which makes [them] statutory for reviewability purposes under *Dalton v. Specter*." *Global Health Council v. Trump*, No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025) (Katsas, J., concurring in the denial of rehearing en banc).

34

**2.**  Plaintiffs' attempts to distinguish *Global Health Council* fail.  They principally contend that this case is different because it involves "claims alleging a complete lack or want of authority for the executive's action."  Pls. Br. 46.  Such an assertion is not enough to add a constitutional dimension to their statutory claims.  The terminated grant recipients in *Global Health Council* made nearly identical allegations, claiming that the President violated the separation of powers because he "has no unilateral authority to amend or ignore congressional appropriations."  Am. Compl. ¶ 252 (Dkt. No. 73), No. 25-cv-00402, *Global Health Council v. Trump* (Apr. 22, 2025).  Yet the Court still held that the separation-of-powers claim was statutory, not constitutional.

Nor can plaintiffs avoid the force of *Dalton* and *Global Health Council* with citations to inapposite cases.  They mainly rely on the Court's earlier decisions in *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1331 (D.C. Cir. 1996), and *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013), Pls. Br. 54— but the panel in *Global Health Council* already considered, and rejected, materially similar arguments grounded in those same decisions.  *See* 153 F.4th at 16-17.  Plaintiffs' reliance on *Reich* fails because that case addressed only *Dalton*'s holding concerning the availability of a statutory cause of

35

action against the President outside the APA; it did not disturb the Supreme Court's independent holding that "statutory claims cannot be transformed into constitutional ones." *Id.*; *see Reich*, 74 F.3d at 1330-32. And *Aiken County* does not help plaintiffs for several reasons, including that the dispute there "only indirectly implicat[ed] appropriated funds" and involved no constitutional cause of action at all, but instead a mandamus petition under the APA. *Global Health Council*, 153 F.4th at 16; *see Aiken County*, 725 F.3d at 257-60.

3. Last, plaintiffs contend that a faithful application *Global Health Council* would "render specific commands under the Spending and Appropriations power meaningless." Pls. Br. 50-51. That argument is difficult to understand. The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. If the Executive Branch attempted to expend funds from the Treasury that had not been appropriated, it would violate the Appropriations Clause. But that has nothing to do with this case. The Spending Clause is a grant of authority to Congress to spend money to promote the general welfare, and it is difficult to fathom how the Executive Branch could violate it. *See id.* art. I, § 8, cl. 1.

36

And of course nothing in the government's position here suggests that the Executive Branch is free to disregard duly enacted statutes. If the Executive Branch is violating a statute, plaintiffs may well have a successful statutory claim for relief—as, for example, in *Aiken County*. The import of *Dalton* is simply that plaintiffs may not constitutionalize that statutory claim to evade whatever restrictions Congress has placed on judicial review.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

JOHN BAILEY
*Counsel to the Assistant Attorney General*

/s/ John Bailey
JOHN BAILEY
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-6993*
*John.bailey@usdoj.gov*

January 2026

38

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,338 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*/s/ John Bailey*
John Bailey

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ John Bailey*
John Bailey

**ADDENDUM**

## TABLE OF CONTENTS

5 U.S.C. § 702................................................................................................A1

28 U.S.C. § 1491 ...........................................................................................A1

**5 U.S.C. § 702**

## § 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.  Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

**28 U.S.C. § 1491**

## § 1491. Claims against United States generally; actions involving Tennessee Valley Authority

**(a)**

**(1)** The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.  For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space

Administration shall be considered an express or implied contract with the United States.

    . . .

. . .

A2